# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEFFREY BENEDETTO | * | |
| v. | * | Civil Action No. CCB-17-0058 |
| JEFFERSON B. SESSIONS, III, *et al.* | * | |
| | * | |
| | *** | |

## Memorandum

The plaintiff, Jeffrey Benedetto, has sued two federal defendants, Attorney General Jefferson B. Sessions, III and Thomas E. Brandon, the Acting Director for the Bureau of Alcohol, Tobacco, Firearms, and Explosives. He also has sued two state defendants, William L. Pallozzi, Secretary of the Maryland Department of State Police, and Brian E. Frosh, Attorney General of Maryland. Benedetto asserts an as-applied challenge to a federal firearms statute, 18 U.S.C. § 922(g)(1), and Maryland's equivalent firearms statutes, MD. CODE ANN., PUB. SAFETY § 5-133(b)(1), § 5-144, and § 5-205(b)(1), claiming that they are unconstitutional burdens on his second amendment rights and ex post facto punishments in violation of the United States Constitution, U.S. Const. art. 1, § 9, cl. 3 (applies to the federal government); U.S. Const. art. 1, § 10, cl. 1 (applies to the states).

The plaintiff has filed a motion for summary judgment, and both federal and state defendants have moved to dismiss the claim. For the reasons stated below, this court will deny the plaintiff's motion and will grant the defendants' motions to dismiss.[1]

---

[1] Because this case will be dismissed under Fed. R. Civ. P. 12(b)(6), the court does not need to reach Benedetto's motion for summary judgment. For the same reason, the federal defendants' motion to stay consideration of Benedetto's motion for summary judgment pending discovery will be denied.

1

**Background**

In 1992, Jeffrey Benedetto pled guilty to a misdemeanor battery charge under what is now § 3-203 of the Maryland Code of Criminal Law. (Compl., ECF No. 1 ¶ 7). He received a one-year suspended sentence and 18 months of probation. (*Id.*). Since his guilty plea, Benedetto has not been arrested or convicted of another crime. He completed his sentence and probation without incident. (*Id.*).

Some 24 years later, in 2016, Benedetto tried and failed to obtain a handgun license to defend "himself and his family within his home." (*Id.* at ¶ 1). He was informed by Maryland State Police that he was disqualified from gun ownership under the Maryland Gun Violence Act of 1996 because his 1992 misdemeanor conviction carries a statutory penalty of greater than two years. (*See id.* at ¶ 8). Benedetto appealed the decision but was rebuffed by both the Maryland Office of Administrative Appeals and the Circuit Court of Maryland for Anne Arundel County. (*Id.* at ¶ 9).

Benedetto now sues the state and federal defendants in federal court for declaratory and injunctive relief. He asserts as-applied second amendment challenges against the federal and Maryland firearms regulations: 18 U.S.C. § 922(g)(1) and MD. CODE ANN., PUB. SAFETY §§ 5-133(b)(1), 5-144, and 5-205(b)(1).[2] He also claims that the laws constitute ex post facto punishment in violation of the Constitution. Because Benedetto is not a "law-abiding and

---

[2] The federal firearms statute, 18 U.S.C. § 922(g)(1), makes it unlawful "for any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 921(a)(20)(B) expressly excludes from this prohibition "laws of the State [classified] as a misdemeanor and punishable by a term of imprisonment of two years or less." Maryland has substantially similar firearms statutes: MD. CODE ANN., PUB. SAFETY § 5-133(b)(1) prohibits persons from possessing regulated firearms if they have "been convicted of a disqualifying crime;" § 5-144 makes it illegal to knowingly participate in the sale and possession, among other things, of regulated firearms; and § 5-205(b)(1) prohibits persons who have been convicted of a disqualifying crime from possessing a rifle or shotgun. Among the list of disqualifying crimes are "misdemeanor[s] . . . that carries a statutory penalty of more than 2 years." § 5-101(g)(3).

responsible citizen" and because the Fourth Circuit already has upheld § 922(g)(1), a law substantially similar to the Maryland firearms statutes, against an ex post facto claim, Benedetto's claims must be dismissed.

**Standard of Review**

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**Analysis**

Benedetto's complaint contains two challenges. The first alleges that the federal and Maryland firearms laws are unconstitutional as applied because Benedetto pled guilty to a misdemeanor, not a felony. The second asserts that the challenged laws violate the ex post facto clauses of the Constitution.

1. Second Amendment Challenge

Since *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Fourth Circuit has used a two-step framework to address second amendment challenges. The first step requires a court to determine whether the challenged law burdens or regulates the second amendment as it was understood in 1791. *Hamilton v. Pallozzi*, 848 F.3d 614, 623 (4th Cir. 2017). If the court finds that the second amendment is burdened, the second step requires a court to apply intermediate scrutiny to the law. *Kolbe v. Hogan*, 813 F.3d 160, 179 (4th Cir. 2016).

When dealing with a presumptively valid regulatory law, however, the court should streamline the first step of the test. *Hamilton*, 848 F.3d at 623. A presumptively valid law is any law that does not infringe upon the "law-abiding and responsible citizen['s] [freedom] to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). In such cases, the court can bypass the historical analysis otherwise required by *Heller* and instead presume that the challenged law is valid unless the plaintiff rebuts that presumption. *Hamilton*, 848 F.3d at 624. A plaintiff can do so by showing "that his factual circumstances remove his challenge from the realm of ordinary challenges." *U.S. v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012).

In *Hamilton*, the Fourth Circuit limited the type of factual circumstances that may be

used to rebut the presumption of lawfulness. The court held that a person convicted of a felony "cannot be returned to the category of law-abiding, responsible citizens," and therefore cannot overcome the presumption of lawfulness in step one, "unless the felony conviction is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful." *Hamilton*, 848 F.3d at 626 (internal quotation omitted). Factors external to the conviction like "rehabilitation, likelihood of recidivism, and passage of time," are not adequate bases for reinstatement to the class of law-abiding, responsible citizens. *Id.* In short, a person with a felony conviction may not overcome the presumption of lawfulness unless he can show that his conviction was pardoned or the conviction was unlawful.

The Fourth Circuit recognized that some misdemeanor convictions may overcome the presumption of lawfulness at step one, *id.* at 626 n.11, however, and Benedetto attempts to distinguish his case on this last point. He argues that because he was only convicted of a misdemeanor he is still a law-abiding citizen and therefore the challenged laws as applied to him are not presumptively lawful. He also asserts that even if the laws are presumptively lawful, his post-conviction history removes him from the mass of ordinary challenges and thus rebuts that presumption. Although Benedetto is correct that *Hamilton* leaves open the possibility that a misdemeanor may be treated differently from a felony, he still fails to show that the presumption of lawfulness does not apply to his case. His conviction demonstrates disrespect for law, as in *Hamilton*, and he cannot rebut the presumption of lawfulness because he fails to differentiate his claim from the mass of ordinary challenges.

### A. Misdemeanor Conviction

The defendants' motions to dismiss will be granted because Benedetto fails to show that

he is a "law-abiding, responsible citizen"[3] or rebut the challenged laws' presumption of lawfulness.[4]

The Fourth Circuit recognized that some plaintiffs with convictions labeled as misdemeanors, but punishable by a prison term sufficient to fall within felon disarmament laws, might prevail at step one of the second amendment analysis. *Hamilton*, 848 F.3d at 626 n.11. There is no suggestion, however, that Benedetto would fall into that exception. Important to the *Hamilton* court's holding that even non-violent felons are carved out from second amendment protections was that a felony is not "merely [an] error[] in filling out a form or some regulatory misdemeanor offense; these are significant offenses reflecting disrespect for the law." *Id.* at 627. Benedetto's battery conviction involves harm to another, it carries a maximum sentence of 10 years, and it is not a mere regulatory misdemeanor.

In Maryland, battery has three elements: "the State must prove that: (1) the defendant caused offensive physical contact with, or harm to, the victim; (2) the contact was the result of an intentional or reckless act of the defendant and was not accidental; and (3) the contact was not consented to by the victim or was not legally justified." *U.S. v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013) (quoting *Nicolas v. State*, 44 A.3d 396, 403-04 (Md. 2012)).[5] While it may not require intent to harm, battery cannot be committed accidentally; instead it involves disregard of another's well-being and disrespect for law.[6]

---

[3] Because the federal and Maryland firearms statutes are substantially similar this opinion will analyze both under the same standard. *See Hamilton*, 848 F.3d at 623 (the Fourth Circuit doing the same).

[4] The federal defendants argue that even if Benedetto could overcome the presumption of lawfulness they would prevail under intermediate scrutiny. Because the parties' motions will be disposed of at step one of the analysis, step two of the analysis will not be addressed.

[5] Although *Royal* ultimately decided that battery is not a "crime of violence" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), that conclusion was dictated by an analysis different from what is required in this case.

[6] Benedetto asserts that at the time of his conviction battery required proof of an "intentional, unpermitted touching of the body of another that is harmful or offensive to the person who was touched. Accidental or inadvertent contact does not amount to a battery." *Doe v. Archdiocese of Washington*, 689 A.2d 634, 640 (Md. 1997). This is a statement of the civil standard for battery. *Id.* In any event, the standard is essentially the same as that set forth in

Contrasting this case with *Corcoran v. Sessions*, -- F. Supp. 3d -- (D. Md. 2017), helps emphasize this point. In that case, the court held that the plaintiff was not removed from the class of law-abiding citizens because the conduct underlying his misdemeanor conviction was "*de minimis,*" *id.* at *11, involving only the use of his girlfriend's car without permission, carrying a maximum prison term of only one year, and not involving violence. *Id.* The court was emphatic: Corcoran's criminal activity is "relatively innocuous;" "Corcoran's Unauthorized Use of a Vehicle conviction seems trivial" when compared to more serious convictions like fleeing from the police; Corcoran's conviction does not require "an intent to steal or permanently deprive the owner of property" and nor does it include "as an element the use of force and there is no indication that Corcoran's offense was violent." *Id.* at *9-*11.[7]

Benedetto's conviction, by contrast, could include the use of force. In Maryland, it carries a term of imprisonment of 10 years, and its focus is not on the "relatively innocuous" temporary taking of a car without permission but the injury to another's person. For this reason, Benedetto's conviction, like the conviction in *Hamilton*, removes him from the category of law-abiding citizens, and therefore the challenged laws are presumptively lawful as applied to him.

B. The Realm of Ordinary Challenges

Even if Benedetto's conviction removes him from the category of law-abiding citizens, he argues he can overcome the presumption of lawfulness based on his personal background. Benedetto attempts to distinguish his misdemeanor conviction from the mass of other misdemeanor convictions by describing his 25-year post-conviction history, which reflects rehabilitation and good citizenship. As far as the court is aware, Benedetto has been a model citizen since 1992. All of that is of questionable relevance, however. As already noted, the

---

*Royal*.

[7] *Corcoran* did not reach the plaintiff's challenge to 18 U.S.C. § 922(g)(1). *Corcoran*, -- F. Supp. 3d at *1 n.4.

Fourth Circuit was clear in *Hamilton*: "[W]e . . . hold that evidence of rehabilitation, likelihood of recidivism, and passage of time are not bases for which a challenger might remain in the protected class of law-abiding, responsible citizen[s]." *Hamilton*, 848 F.3d at 626 (internal quotations omitted); *see also Corcoran*, -- F. Supp. 3d at *8. Benedetto argues that the Fourth Circuit only meant to apply this holding to felonies. *Corcoran* disagreed, however, noting that the Fourth Circuit meant to apply "this limitation to step one of the . . . analysis generally." *Corcoran*, -- F. Supp. 3d at *8 n.22. Indeed, permitting Benedetto to make this claim could lead to the same type of jury argument, if he were charged under 18 U.S.C. § 922(g)(1), that the *Hamilton* court sought to prevent. *Hamilton*, 848 F.3d at 627 ("The criminal defendant would be able to freely admit violation of the law in the past, but request that the jury not convict on the grounds of rehabilitation, unlikeliness of re-offending, or the length of time that had passed since conviction.").

Even if such evidence is admissible at step one as to a state misdemeanor, Benedetto fails to show how the evidence he proffers would remove his case from the realm of ordinary challenges. Though laudable, his rehabilitation is not extraordinary; following the law is merely the baseline. Benedetto has not alleged facts sufficient to explain why the challenged laws as applied to his case differ in any meaningful way from their application to the usual run of cases. As a result, and for the reasons above, the defendants' motions to dismiss will be granted.

2. Ex Post Facto Claim

Benedetto also challenges the federal and Maryland firearm statutes as violations of the ex post facto clauses of the Constitution. U.S. Const. art. 1, § 9, cl. 3 (applies to the federal government); U.S. Const. art. 1, § 10, cl. 1 (applies to the states). Under controlling Fourth Circuit precedent this challenge cannot succeed. In *U.S. v. Mitchell*, 209 F.3d 319 (4th Cir.

2000), the plaintiff challenged the application of the Federal Firearms Act to his case, arguing that because he was convicted, sentenced, and purchased a firearm before the Act was passed, the Act constituted an ex post facto punishment. *Mitchell*, 209 F.3d at 322. The Fourth Circuit rejected these arguments finding that "[i]t is immaterial that [the plaintiff's] firearm purchase and . . . conviction occurred" prior to the enactment of the Firearms Act "because the conduct prohibited by [the Act] is the possession of a firearm," an entirely separate act that occurred *after* his conviction and purchase of the firearm. *Id.* The court also found it important that all courts addressing similar challenges had come to the same conclusion. *Id.* at 323.

Benedetto attempts to distinguish himself from the plaintiff in *Mitchell* by noting that the plaintiff in *Mitchell* was contesting a criminal conviction for possession of a firearm in violation of the Federal Firearm Act while Benedetto is challenging the law at a prior, pre-gun-purchase, stage. Whether a gun was purchased before the challenged law was enacted, however, is immaterial to whether the challenged law regulates conduct that occurred before or after its enactment. Indeed, if there is a material difference between this case and *Mitchell* it cuts against Benedetto—the plaintiff in *Mitchell* purchased his gun before the law was enacted and therefore had a stronger argument that the newly enacted law was regulating prior conduct. In any case, the *Mitchell* court was focused on whether the newly unlawful conduct occurred after the relevant conviction. Because the answer in this case is yes, *Mitchell* controls. *See Corcoran*, -- F. Supp. 3d at *18.

The plaintiff also tries to rebut the consensus recognized by *Mitchell* by arguing that *INS v. St. Cyr*, 533 U.S. 289 (2011), *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and *Jaghoori v. Holder*, 772 F.3d 764 (4th Cir. 2014) are better authority on the application of "new collateral or civil consequences [to] criminal convictions." (ECF No. 7, p.3). But these cases do

9

not consider ex post facto clause challenges. They focus instead on whether Congress intended a particular law to have retroactive effect, a related but different question. *See St. Cyr*, 533 U.S. at 314-16; *Landgraf*, 511 U.S. at 285-86; *Jaghoori*, 772 F.3d at 766. *Mitchell* controls; the federal and Maryland firearm statutes do not violate the ex post facto clauses of the Constitution.

**Conclusion**

For these reasons, the plaintiff's motion will be denied and the defendants' motions will be granted. A separate order follows.

_____9/27/2017_____ _____/s/_____
          Date                                        Catherine C. Blake
                                                            United States District Judge